## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DISTRICT

| | |
|---|---|
| TIARA ROBINSON, as Next Friend and ) <br> Natural Mother of C.R., TIARA ) <br> ROBINSON, Individually, and ) <br> ORLANDUS ROBINSON, Individually, ) <br>                     ) <br>        Plaintiffs,    ) <br>                     ) <br> v.                       ) <br>                     ) <br> NEWELL WINDOW FURNISHINGS, INC., ) <br>                     ) <br>        Defendant.    ) | No. 4:10-CV-01176 JCH |

## NEWELL WINDOW FURNISHINGS, INC.'S
## RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
## TESTIMONY OF DEFENDANT'S EXPERT ERICK H. KNOX

Newell Window Furnishings, Inc. ("Newell"), pursuant to Local Rule 7 - 4.01(B), respectfully submits the following Response in Opposition to Plaintiffs' Motion to Exclude Testimony of Defendant's Expert Erick H. Knox (ECF No. 86).

## INTRODUCTION

This products liability action arises from toddler C.R.'s entanglement in the interior, or "inner cords," of a window blind. (*See* Pls.' Am. Compl. Counts I, III, V, ECF No. 18.) Plaintiffs have asserted strict liability, negligence, and failure to warn claims, alleging that the blind was defective because the inner cord could be pulled out of the blind and placed around C.R.'s neck, causing her to sustain an anoxic brain injury. (*See id.*) It is undisputed that C.R. was not tall enough to access the subject window blind while standing on the floor. Without performing any of their own independent testing, and based only on the available record, Plaintiffs' experts have proffered opinions that C.R. was standing on a toy bin found in the room after the accident, which, they opine, provided the height necessary for C.R. to reach a point in

the blind from which the inner cord was extracted.  (*See* Defs.' Mots. Exclude, ECF Nos. 78, 80.)

Based on the same record, in addition to his own independent surrogate testing, Newell's

biomechanical and engineering expert Dr. Erick Knox reached the conclusion that Plaintiffs'

version of how the accident occurred is inconsistent with the evidence.  (Ex. A, Knox Rep. 1-15,

24.)  Dr. Knox also has opinions regarding the state of the art in the industry that provides

context for the jury's assessment of the blind's design, and whether the blind was unreasonably

dangerous.  (*Id.* at 16-20, 24.)   Contrary to Plaintiffs' assertions, these opinions are directly

relevant to issues the jury must consider in this case, and have a sound basis in the extensive

record in this case.   This Court should therefore deny Plaintiffs' motion.

## ARGUMENT

### I.    DR. KNOX'S FIRST CONCLUSION IS UNQUESTIONABLY RELEVANT.

To satisfy relevancy, an expert's testimony must "assist the trier of fact to understand the

evidence or to determine a fact in issue."  Fed. R. Evid. 702; *Lauzon v. Senco Prods., Inc.*, 270

F.3d 681, 686 (8th Cir. 2001) (relevancy "is whether the opinion offered by the expert is

sufficiently related to the facts of the case such that it will aid the jury in resolving the factual

dispute").  Dr. Knox's conclusion that any hazard posed by the blind's inner cord was not

identified until after the subject blind had been manufactured will assist the jury in determining

whether the blind was unreasonably dangerous or defective at the time it left the manufacturer

and was sold to its purchaser — a key issue at the heart of Plaintiffs' claims.  *See Baker v.

Bridgestone/Firestone Co.*, 966 F. Supp. 874, 874 (W.D. Mo. 1996) ("In Missouri, a Plaintiff

alleging strict liability and negligence in a product liability case must show that the defective

product was placed in the stream of commerce by the defendant and that it was defective at that

time." (citations omitted)).

In a products liability case, expert opinions are particularly useful because jurors "are not likely to possess 'common understanding' about how products are designed." *Dancy v. Hyster Co.*, 127 F.3d 649, 653 (8th Cir. 1997).  "These are matters the jury is required by law to consider in determining whether a defect exists, and without evidence on the point the jury would be doing nothing more than speculating-which, of course, cannot be allowed." *Id.* at 654 n.4.  Expert testimony is helpful when "jury questions exist on what the applicable industry standards were at the time of the accident and whether the [product] complied with those standards." *Williams v. MD Cowan, Inc.*, No. 4:09-cv-459-DPM, 2011 WL 4527361, at *5-6 (E.D. Ark. Sept. 29, 2011) (denying motion to exclude expert as improperly invading the province of the jury).  Dr. Knox's first conclusion, regarding state of the art in the window blind industry, goes directly to the circumstances surrounding the design of the subject blind and is therefore relevant.

Plaintiffs argue that Dr. Knox's opinion is not relevant because "Dr. Knox reviews documents and testimony in the record of this case, sets forth a factual narrative with a spin towards Defendants' position, and reaches a conclusion the jury is perfectly capable of reaching on its own."[1]  (Pls.' Mot. 9.)  Plaintiffs' reliance on the *Lee*, *Fisher*, and *Rezulin* cases in support of that argument is misplaced.  *Cf. Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (excluding expert who enlarged pictures to testify whether an individual had a gun and "[w]hen asked what methods and principles he used to interpret images, Dierks replied that the first method is 'simple observation'"); *Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006) (holding

---

[1] Interestingly, Plaintiffs challenge Dr. Knox's opinion when their experts have rendered opinions on the same ultimate issue after conducting a similar review of the same documents and testimony.  Thus, if Dr. Knox's opinion invades the province of the jury and does not satisfy the relevancy requirements of Rule 702, the same is true for Plaintiffs' experts' opinions.  (*See* Defs.' Mots. Exclude, ECF Nos. 78, 80.)

that testimony by an administrative law attorney class certification proceedings was simply advocacy for plaintiffs); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 n.40 (S.D.N.Y. 2004) (excluding experts "who propose improperly to assume the role of advocates for the plaintiffs' case by arguing as to the intent or motives underlying the conduct of Warner-Lambert or others, a transgression that has resulted in the exclusion of 'expert' testimony as to the 'real motive' behind certain business transactions" and who "admitted that the testimony he proposes to give in this case is based on a series of inferences with no basis in fact or scientific method").

In contrast to the circumstances in those three cases, Dr. Knox is not making "simple inferences" about evidence in the record, nor is he setting forth an inaccurate or incomplete factual narrative meant to advocate for Newell.  Instead, he conducted a thorough analysis of the evidence regarding the circumstances of C.R.'s accident, other mini-blind accident reports, government reports, industry association reports, standards publications, and academic articles. He applied his specialized knowledge and expertise in mechanical and biomechanical engineering to these materials.  His opinion that the window blind was not unreasonably dangerous or defective at the time of its manufacture is based on his engineering analysis and his expertise.  *See Williams v. Pro-Tec, Inc.*, 908 F.2d 345, 348 (8th Cir. 1990) (affirming mechanical engineering expert opinion that eye guard was not unreasonably dangerous and challenges went to weight rather than to admissibility).   It is not grounds for exclusion that Dr. Knox simply reached a contrary opinion to Plaintiffs' experts.  *See Smith v. BMW North Am., Inc.*, 308 F.3d 913, 921 n.11 (8th Cir. 2002) ("Experts frequently disagree and their opinions, if reliable, are for a jury's consideration."); *McIntosh v. Monsanto Co.*, 462 F. Supp. 2d 1025, 1032 (E.D. Mo. 2006) ("I cannot, however, exclude [expert] testimony merely because Monsanto and

its experts disagree with his conclusions.").  Accordingly, Dr. Knox's opinion will assist the jury in determining an ultimate fact in issue, and is therefore relevant and admissible.

## II.   DR. KNOX'S SECOND CONCLUSION IS ALSO PLAINLY RELEVANT.

Dr. Knox's second conclusion, that the subject blind is not defective or unreasonably dangerous when used in a reasonably intended manner, is also relevant.  Plaintiffs' argument overlooks both Dr. Knox's analysis and the relevant legal standard for the admission of expert testimony on this point.

To prevail on their strict liability claim, Plaintiffs must demonstrate that the subject blind was in a defective condition unreasonably dangerous for its intended use.  *Willard v. Bic Corp.*, 788 F. Supp. 1059, 1063 (W.D. Mo. 1991) (citing *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969)).  For both their negligence and strict liability claims, they must also prove that a defect in the blind or the negligence of Newell was the proximate cause of C.R.'s injuries while using the product in a reasonably intended manner.  *Id.*; *Chronister v. Bryco Arms*, 125 F.3d 624, 627 (8th Cir. 1997) (finding "concept of reasonably anticipated use . . . includes misuse and abnormal use which is objectively foreseeable").

Dr. Knox's second conclusion is not "irrelevant and inadmissible on its face."  (Pls.' Mot. 10.)  Rather, he provided a thorough basis to conclude that "based on the analysis to date, as well as on prior education, training, testing, engineering analysis, and experience . . . [the window blind] was not defective in design, nor unreasonably dangerous when used as the manufacturer intended."  (Rep. Knox 24.)  In particular, Dr. Knox applied his specialized knowledge and expertise in biomechanical and safety engineering to show "[i]t is not expected or reasonably foreseeable that anyone would intentionally interact with the inner cord during use."  (*Id.* at 19.)  Further, his report explains how governmental and industry knowledge and awareness establish that "the actions necessary to create the hazard were not a reasonably foreseeable use or misuse

- 5 -

of the product." (*Id.* at 20.)  As with the first conclusion, Dr. Knox applied his specialized knowledge and expertise to the record in this case, and reached an opinion that will assist the jury in determining an ultimate fact in issue. *See Williams*, 908 F.2d at 348.  Plaintiffs' argument is unavailing.

## III.     DR. KNOX'S THIRD CONCLUSION IS NOT BASED ON SPECULATION.

Plaintiffs characterize Dr. Knox's third opinion, regarding the implausibility of plaintiffs' version of the accident, as impermissible speculation.  (Pls.' Mot. 10-11.)  The argument lacks merit on several levels.  First, Dr. Knox is a biomechanical and safety engineer with significant experience and exemplary qualifications, as Plaintiffs acknowledge.  Second, his opinions are based on the extensive record in this case and independent testing he conducted pursuant to a reliable methodology.  His opinion is not based on speculation.  Finally, that Plaintiffs' experts have offered opinions based on the same record as Dr. Knox (minus independent testing, which they failed to conduct) only emphasizes why the basis for his opinions is adequate.

An expert must have a reasonable factual basis for his testimony.  Fed. R. Evid. 702, 703; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  Once that basis is established, the factual basis for the opinion goes only to the credibility of his testimony, not its admissibility. *Nebraska Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (quoting *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)).  Any inadequacy in the factual basis for an expert's opinion is a matter for the opposing party to examine during cross-examination.  *Id.*  Thus, the expert's opinion should be excluded only when it is "so fundamentally unreliable that it can offer no assistance to the jury."  *Harrington v. Sumbeam Prods., Inc.*, 4:07-CV-1957 CAS, 2009 WL 701994, at *4 (E.D. Mo. Mar. 13, 2009).

Dr. Knox's proposed testimony about C.R's inability to access the subject window blind satisfies the broad reliability standards imposed by *Daubert* and its progeny in the Eighth Circuit.

His opinions are based on the extensive record in this case, including the testimony of Plaintiffs; the St. Louis Police Department investigative report and photographs; testimony of responding officers; and the Children's Hospital social worker assessment and testimony of the social worker.  (Rep. Knox 1-11.)  Further, Dr. Knox analyzed documents regarding the design of the subject window blind and the circumstances regarding installation of the subject blind, and performed a site inspection of the Robinson home.  (*Id.* at 11-13.)  Most importantly, he also conducted a surrogate study in which he evaluated the ability of a similarly sized child to reach the point in the blind where the inner cord had been extracted from the blind.  (*Id.* at 15.)  Based on this exhaustive review, his expertise in biomechanical and safety engineering, and his own testing, Dr. Knox found C.R. that "could not reach the lowest possible location where the inner cord loop was created from while standing on the ground or on the approximately 2 inch pink toy." (*Id.*)

Dr. Knox used Plaintiffs' theory as a hypothesis — that C.R. could reach the window blind and pull out the inner cord to form a loop by standing on the toy bin found upright away from the subject window — and he falsifies that hypothesis with independent testing.  Plaintiffs are understandably concerned about Dr. Knox's conclusion, because they have no evidence and no testing to the contrary, despite bearing the burden of proof in this case.  But the only "non-scientific speculation regarding the toy bin" is their own experts' opinions, based on the same record from which Dr. Knox relies and tests.  (*Compare* Pls.' Mot. 11 *with* Defs.' Mots. Exclude, ECF Nos. 78, 80.)

The Western District of Missouri has previously rejected similar challenges to Dr. Knox, holding Plaintiffs should address any supposed inadequacies in the foundation for his opinions on cross-examination:

> Plaintiff identifies several factors he believes undercut Dr. Knox's conclusions, and Plaintiff is free to raise those issues on cross-examination. However, as stated earlier, "the factual basis of an expert opinion goes to the credibility of the testimony, and not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.  Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.

*Carlisle v. Hitachi Koki U.S.A. Ltd.*, No. 05-0995-CV-W-ODS, 2007 WL 1100454, at *4 (W.D. Mo. Apr. 10, 2007) (brackets and citation omitted); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  The Court should follow suit and reject Plaintiffs' third argument.

## IV.    DR. KNOX IS QUALIFIED TO OFFER HIS FOURTH CONCLUSION.

Finally, Dr. Knox is qualified to offer his fourth conclusion that C.R.'s accident would not have occurred if she were properly supervised at the time of the accident.  (Pls.' Mot. 11-12.) An expert is qualified to testify by virtue of his "knowledge, skill, experience, training or education."  Fed. R. Evid. 702.   An expert's testimony should "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Id.*  This standard is satisfied when the expert's testimony "advances the trier of fact's understanding to any degree."  *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006); *Williams*, 908 F.2d at 348 (expert's qualification is "'whether his knowledge of the subject matter is such that his opinion will most likely assist the trier of fact in arriving at the truth'" (quoting *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 857-58 (8th Cir. 1975)).  "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson*, 447 F.3d at 1101.

Plaintiffs' argument is hyperbole.  There is no "expert on parenting and/or parental supervision."  (Pls.' Mot. 12.)  To be sure, Plaintiffs have not offered one in this case.  Neither

have they cited any decision identifying one.  Plaintiffs cannot exclude Dr. Knox because they have defined a fictional field of expertise.  Dr. Knox does, however, have specialized knowledge, experience, and education that will help the jury understand the evidence and determine a critical issue in this case — whether the accident would have occurred if C.R. was properly supervised at the time of the accident.  Dr. Knox received his Ph.D. and M.S. in Biomedical Engineering from Northwestern University and has worked in the field of biomechanical and safety engineering for more than 20 years.  (Ex. B, *Curriculum Vitae* 1.)   He specializes in biomechanical analysis, determination of injury causation and mechanisms, ergonomics and human factors analysis, accident investigation and reconstruction, mechanical testing and failure analysis, human motion analysis including occupant kinematics, and biomedical devices.  (*Id*.)   His opinions regarding the Robinsons' lack of supervision are supported by the social worker's findings regarding the subject accident (*see* Rep. Knox 9-10), as well as academic and government studies (*see* Rep. Knox 20-23). Because of his extensive knowledge, experience, and studies in the fields of injury causation and safety engineering, he is qualified to opine about whether the accident would or would not have occurred if C.R. was properly supervised at the time of the accident.  The Court should therefore reject this argument.

## <u>CONCLUSION</u>

For these reasons, Defendant Newell Window Furnishings, Inc. respectfully requests that this Court deny Plaintiffs' Motion to Exclude Testimony of Defendants' Expert Erick H. Knox.

Respectfully submitted,


By:      /s/ Holly A. Podulka

        Kevin P. Krueger, #03319
        Natalie J. Kussart, #59622MO
        600 Washington Avenue - 15th Floor
        St. Louis, MO  63101-1313
        314-231-3332
        314-241-7604 (Fax)
        E-mail:  kkrueger@sandbergphoenix.com
                nkussart@sandbergphoenix.com

        Joseph J. Krasovec III, *pro hac vice*
        Holly A. Podulka, *pro hac vice*
        Schiff Hardin LLP
        233 South Wacker Drive, Suite 6600
        Chicago, IL 60606
        (312) 258-5500
        (312) 258-5600 (Fax)
        E-mail:  jkrasovec@schiffhardin.com
                hpodulka@schiffhardin.com

        *Attorneys for Defendant*
        *Newell Window Furnishings, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on June 25, 2012, she filed the foregoing and this Certificate of Service with the Clerk of the Court via the Case Management/Electronic Case Filing (CM/ECF) system, which will provide electronic notice to all counsel of record.

/s/ Holly A. Podulka

CH2\11453370.3