UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIARA ROBINSON, as Next Friend and Natural Mother of C.R., et al., | )<br>)<br>) |
| Plaintiff(s), | )<br>) |
| vs. | ) Case No. 4:10CV1176 JCH |
| NEWELL WINDOW FURNISHINGS, INC., | )<br>)<br>) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Newell Window Furnishings, Inc.'s ("Newell") Motion to Exclude Plaintiffs' Disclosed Expert Shelley Deppa, Newell's Motion to Exclude Plaintiffs' Disclosed Expert Ben T. Railsback[1], Plaintiffs' Motion to Exclude Testimony of Defendants' Expert Christine Wood, and Plaintiffs' Motion to Exclude Testimony of Defendants' Expert Erick H. Knox, all filed June 4, 2012.  (ECF Nos. 78, 80, 84, 86).  The Court held a hearing on the motions on July 19 and 20, 2012.

## BACKGROUND

On July 7, 2009, while at her home at 1541 Bayonne, St. Louis, Missouri, minor Plaintiff C.R. became entangled in the inner cord of a window covering.  (Amended Complaint, ¶ 5).  Plaintiffs maintain that as a result of this accident, C.R. suffered catastrophic brain injury, cerebral palsy, and spastic quadriplegia, among other serious and permanent injuries.  (Id.).

---

[1] J.C. Penney Corporation originally joined in Newell's Motions to Exclude.  Plaintiffs voluntarily dismissed J.C. Penney Corporation as a Defendant in this matter on June 4, 2012. (ECF Nos. 77, 94).

Plaintiffs filed their original Petition in this matter on March 29, 2010, in the Circuit Court of St. Louis County, Missouri. (Notice of Removal, ¶ 1). Newell removed the action to this Court on July 1, 2010. (ECF No. 1). In Count I of their Amended Complaint, filed August 18, 2010, Plaintiffs allege Strict Liability against Newell. (Amended Complaint, ¶¶ 7-19). Specifically, Plaintiffs allege the corded window covering at issue, designed, manufactured, fabricated, assembled, distributed, marketed and/or retailed by Newell, was unreasonably dangerous and defective in one or more of the following respects:

   a.   The window covering did not have proper warnings and/or warnings permanently affixed to the blind and/or information on or with the window covering properly warning of the strangulation hazards associated with the product;

   b.   The product had a pull cord and lift cords with exposed cord lengths in excess of 7 1/4 inches which posed an unreasonable risk of strangulation;

   c.   The window covering did not have a lift system that would eliminate cords and/or the risk of strangulation;

   d.   The window covering did not have adequate safety devices to reduce access to and/or eliminate loops and/or cord hazards of the window covering;

   e.   The window covering system contained cords not necessary for the operation of the product;

   f.   The product failed to contain inner cord stops or cord cleats so as to reduce access or eliminate loop formation; and

   g.   The product was sold without adequate consideration or warning regarding the suitability of a product for use in houses with small children.

(Id., ¶¶ 9, 10). In Count III, Plaintiffs allege Newell failed to use ordinary care in the design, fabrication, manufacture, assembly, testing, labeling, distributing, marketing and/or retailing of the window covering and its component parts so as not to injure or kill its users, in one or more of the following respects:

a. Defendant was negligent in allowing the product to be sold without safety devices and/or mechanisms to prevent the possibility of strangulation;

b. Defendant was negligent in allowing the product to contain cords capable of forming an exposed loop in excess of 7 1/4 inches which pose an unreasonable risk of strangulation;

c. Defendant negligently failed to include proper warnings permanently affixed to the window covering and/or failed to provide adequate information regarding the possible strangulation hazards associated with the product and/or the fact that the product in question was unsafe for use in homes where small children might be present;

d. Defendant negligently failed to utilize a lift cord system that would eliminate cords and/or the risk of strangulation;

e. Defendant failed to take adequate measures to redesign its product to avoid the risk of strangulation;

f. Defendant negligently failed to modify, retrofit and/or adequately recall a known defective product sold by it, having undertaken to do so;

g. Defendant's product was negligently manufactured and sold in a condition such that it failed to perform safely as an ordinary consumer would expect when the product was used in a reasonably foreseeable manner; and

h. Defendant failed to consult as to the product most suitable for their application and failed to consult regarding alternate feasible designs and cordless alternatives, and failed to advise that the product in question was unsafe in a home where children would be present, and failed to stock appropriate cordless alternatives.

(Id., ¶ 37). In Count V, Plaintiffs allege the window covering was rendered unreasonably dangerous and defective, as it lacked an adequate and permanent warning to consumers when it left the control of Newell, and it failed to contain adequate instructions or warnings concerning safe methods of installation and use, and/or the dangers referenced in Plaintiffs' Complaint. (Id., ¶¶ 50, 51).

In support of their claims, Plaintiffs seek to introduce the testimony of expert witnesses Shelley Deppa and Ben T. Railsback. In support of its defenses, Newell seeks to introduce the testimony of expert witnesses Christine Wood and Erick H. Knox. In their respective Motions to

Exclude, Plaintiffs and Newell maintain all or parts of each expert's opinions are inadmissible under both the Federal Rules of Evidence and the Supreme Court's rulings in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999).

## **DISCUSSION**

Under Eighth Circuit law, "[d]ecisions concerning the admission of expert testimony lie within the broad discretion of the trial court." <u>Anderson v. Raymond Corp.</u>, 340 F.3d 520, 523 (8th Cir. 2003) (internal quotation marks and citation omitted). As a preliminary matter, "[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." <u>Lauzon v. Senco Prods., Inc.</u>, 270 F.3d 681, 686 (8th Cir. 2001) (citation omitted). The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

<u>Id.</u> "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and "[t]he rule clearly is one of admissibility rather than exclusion." <u>Lauzon</u>, 270 F.3d at 686 (internal quotation marks and citations omitted).

Pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, the seminal case regarding expert opinion testimony, "district courts are to perform a 'gatekeeping' function and insure that proffered expert testimony is both relevant and reliable." <u>Dancy v. Hyster Co.</u>, 127 F.3d 649, 652 (8th Cir.

1997) (citations omitted), cert. denied, 523 U.S. 1004 (1998); see also Daubert, 509 U.S. at 592-93. Thus, in order to be admissible under Rule 702, the proposed expert testimony must meet the following three prerequisites:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

Lauzon, 270 F.3d at 686 (internal quotation marks and citations omitted).

### I.   Shelley Waters Deppa

Shelley Waters Deppa, CHFP, is a Certified Human Factors Professional, with thirty-two years experience applying human factors to the safety of products. (Deppa Preliminary Report, P. 1). According to Ms. Deppa, human factors is "a multi-disciplinary body of knowledge about human abilities, limitations, and other characteristics relevant to design." (Id.). "In the context of safety, human factors relates how human characteristics, product characteristics, and the environment can interact to produce hazards." (Id.).

Plaintiffs retained Ms. Deppa as an expert, "to evaluate the human factors issues regarding the subject Kirsch mini blind." (Deppa Preliminary Report, P. 1). If permitted, Ms. Deppa will testify, in part, that (a) the subject blind had a likely manufacture date of mid to late-1991; (b) the subject mini-blind was unreasonably dangerous due to its defective design; (c) the subject mini-blind was unreasonably dangerous due to its inadequate warnings; (d) the manufacturer foresaw hazards but failed to take appropriate action; and (e) C.R.'s parents, Plaintiffs Tiara and Orlandus Robinson, used the mini-blinds in a reasonable and foreseeable manner, and were reasonable in not foreseeing the hazards. (Id., PP. 2-24).

In its Motion to Exclude Newell maintains Ms. Deppa's expert opinions are inadmissible, for three reasons:  (1) Ms. Deppa is not qualified to offer opinions on engineering and biomechanics; (2) Ms. Deppa's opinions are unreliable because they are based on speculation and conjecture, not a valid scientific methodology; and (3) Ms. Deppa's opinions invade the fact-finding function of the jury on matters of common knowledge.  (Newell's Memorandum in Support of its Motion to Exclude Plaintiffs' Disclosed Expert Shelley Deppa, P. 2).  Newell thus requests that the Court preclude Ms. Deppa from testifying entirely, or in the alternative, strictly limit her testimony to opinions that fall within her designation and qualifications as an expert in "human factors psychology."  (Id.).

### A.     Accident Reconstruction

In performing her analysis in the instant case, Ms. Deppa purports to have engaged in accident reconstruction.  Upon consideration, however, the Court finds Ms. Deppa's stated methodology to be completely unreliable, for several reasons.  First, Ms. Deppa admitted both in her report and during the Daubert hearing that she had never measured the blind at issue (including the length of the inner cord loop, the length of the pull cord, and the height of the damage to the window covering slats), the height of the pink toy box, or the height of the toy bin.  Instead, Ms. Deppa testified that she relied on police photographs, together with measurements taken by an unidentified "investigator," with whom she had never spoken.[2]  Ms. Deppa further testified that although she was aware Plaintiff C.R. was small for her age, under the 5th percentile in height, she nevertheless elected to use anthropometric data for the 50th percentile when performing her calculations.[3]  Finally, Ms. Deppa

---

[2] During the hearing, Ms. Deppa acknowledged not knowing even at whose behest the "investigator" undertook the measurements.

[3] It is notable that while Ms. Deppa offered one explanation for her decision to use inapplicable anthropometric data during the Daubert hearing, Plaintiffs' attorneys offered a completely different explanation for her decision in their response to Newell's Motion to Exclude. In any event, the Court finds neither rationale sufficient to explain the discrepancy.

admitted that she had never examined the toy bin or its contents, and thus was unable to opine with any degree of certainty as to, among other things, whether the outer ledge of the bin would have been strong enough to support C.R.'s weight, whether the interior toys would have compressed under C.R.'s weight, thereby lessening the additional height she would have attained by standing inside the bin, and whether the bin would have tipped over in the accident scenario imagined by Ms. Deppa. Under these circumstances, the Court finds Ms. Deppa's accident reconstruction entirely too speculative to be helpful to the jury, and she thus will not be permitted to testify thereto.[4]

### B. Other Opinions

Upon consideration of the parties' briefs, together with Ms. Deppa's live testimony during the Daubert hearing, the Court will permit Ms. Deppa to testify as to her opinions other than those relating to accident reconstruction.[5] At the outset, the Court finds Plaintiffs sufficiently have established that Ms. Deppa is qualified to testify as an expert witness due to her specialized knowledge, experience and education in the area of human factors. Newell's assertions concerning her lack of education or training "are proper subjects for....thorough cross-examination before the trier of fact." Harrington v. Sunbeam Products, Inc., 2009 WL 701994 at *4 (E.D. Mo. Mar. 13, 2009).

With respect to Newell's other concerns, under Eighth Circuit law "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."

---

[4] As further support for its ruling, the Court agrees with Defendant that Ms. Deppa failed to demonstrate she possesses the requisite expertise that would allow her to engage in accident reconstruction in the first instance.

[5] As with all witnesses, Newell of course remains free to object to Ms. Deppa's testimony at trial; the Court simply declines to exclude the opinions wholesale.

Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 416 (8th Cir. 2005) (internal quotation marks and citations omitted). The expert's opinion thus should be excluded only when it is "so fundamentally unreliable that it can offer no assistance to the jury." Harrington, 2009 WL 701994 at *4 (internal quotation marks and citation omitted).

Here, Plaintiffs have established the alleged methodology underlying Ms. Deppa's opinions, by identifying the materials and publications she relied on, and describing the manner in which she reviewed, summarized, categorized and evaluated all the information at her disposal. Plaintiffs further have described how Ms. Deppa applied the methodology to the facts of this case by reviewing, among other items, the allegations in the Amended Complaint and other pleadings, police and other photographs taken of the window, C.R.'s medical records, the police investigative report, and other technical and injury data. (Deppa Preliminary Report, Attachment 1). The Court thus finds the remaining conclusions set forth in Ms. Deppa's preliminary report sufficiently reliable to assist the jury's determination of a disputed issue and, as above, Newell's assertions concerning flaws in her methodology or underlying assumptions "are proper subjects for [Newell's] own expert testimony and for thorough cross-examination before the trier of fact." Harrington, 2009 WL 701994 at *4; see also Lauzon, 270 F.3d at 695 ("It is far better where, in the mind of the district court, there exists a close case on relevancy of the expert testimony....to allow the expert opinion...."). This portion of Newell's Motion to Exclude Plaintiffs' Disclosed Expert Shelley Deppa will therefore be denied.

**II.     Christine Wood**

Christine T. Wood, Ph.D., is a Principal Scientist and Director of the Human Factors Practice at Exponent Failure Analysis Associates. (Wood Report, P. 1). Dr. Wood describes the field of human factors as "the scientific study of the limitations and capabilities of people as they use products, machines, and systems in their environments." (Id.). As part of her work, Dr. Wood,

"investigate[s] the accident patterns that are unique to children and the effectiveness of strategies used to reduce child injury, such as teaching children safety rules, controlling the environment, and parental/caretaker supervision." (Id.).

As relevant here, Dr. Wood is prepared to testify that "[t]he horizontal blind alleged to have been involved in this incident was not unreasonably dangerous or defective based on knowledge of window covering hazards known at its time of manufacture." (Wood Report, P. 13). Plaintiffs maintain Dr. Wood's expert opinion is inadmissible, for three reasons: (1) the opinion is not based upon any scientific, technical, or other specialized knowledge that would help the trier of fact understand the evidence or determine a fact in issue; (2) Dr. Wood's opinion is unreliable because it is based upon an unsound application of her asserted methodology; and (3) Dr. Wood's opinion is unreliable because it is based merely on speculation and conjecture, not a valid scientific methodology. (Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Exclude Testimony of Defendants' Expert Christine Wood, P. 1). Plaintiffs thus requests that the Court preclude Dr. Wood from testifying regarding her third opinion. (Id.).

As stated above, under Eighth Circuit law, "'[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" Nebraska Plastics, Inc., 408 F.3d at 416 (internal quotation marks and citations omitted). The expert's opinion thus should be excluded only when it is "so fundamentally unreliable that it can offer no assistance to the jury." Harrington, 2009 WL 701994 at *4 (internal quotation marks and citation omitted).

Upon consideration, the Court will allow Dr. Wood to offer her third opinion. Newell has established both that Dr. Wood is qualified to testify due to her specialized knowledge, experience and education in the area of human factors, and that Dr. Wood's third opinion is relevant to the

disputed issue of whether the subject window blind was unreasonably dangerous or defective when it was manufactured and placed in the stream of commerce. Plaintiffs' assertions concerning flaws in her methodology or underlying assumptions "are proper subjects for [Plaintiffs'] own expert testimony and for thorough cross-examination before the trier of fact." Harrington, 2009 WL 701994 at *4; see also Lauzon, 270 F.3d at 695 ("It is far better where, in the mind of the district court, there exists a close case on relevancy of the expert testimony....to allow the expert opinion...."). Plaintiffs' Motion to Exclude Testimony of Defendants' Expert Christine Wood will therefore be denied.

### III. Ben T. Railsback

Ben T. Railsback, M.S., P.E., is the Director of Mechanical Engineering at Knott Laboratory, LLC, in Centennial, Colorado. (Railsback Curriculum Vitae). Plaintiffs retained Mr. Railsback as an engineering expert, "to perform a safety engineering analysis, or hazard analysis and risk assessment of the window blind." (Railsback Preliminary Engineering Report, P. 1). If permitted, Mr. Railsback will testify as to the following conclusions:

1. The hazard of child strangulation associated with window covering cords was well known to Kirsch, the manufacturer of the horizontal blind.

2. The risk associated with child strangulation in window covering cords is significant.

3. Proper engineering practice includes the identification of hazards with products as well as the identification of potential hazards.

4. The severity and frequency of injuries associated with window cords shows that there is a significant danger associated with corded window covering products.

5. Engineering technology existed (and exists) which would have significantly improved the safety of the blind, and which would have prevented the injuries to [C.R.]. In this engineer's opinion, the technology was feasible in the time frame that the subject blind was manufactured.

      6.      Further, many of the potential solutions such as short cords and cleats had been previously recommended in the 1985 CPSC alert and were accepted industry practices.

      7.      The Kirsch blinds did not have any warnings on the blind. A warning is the minimum requirement for a manufacturer when there is a known safety hazard associated with a product.

      8.      The Kirsch blind in question is unreasonably dangerous and defective.

(Id., P. 21).

Newell maintains Mr. Railsback's expert opinions are inadmissible, for two reasons: (1) Mr. Railsback lacks the necessary qualifications to offer opinions about window covering design or warnings; and (2) Mr. Railsback's opinions do not relevantly "fit" the inner cord issue disputed in this case. (Newell's Memorandum in Support of their Motion to Exclude Plaintiffs' Disclosed Expert Ben T. Railsback ("Newell's Memo in Support"), P. 2). Newell thus requests that the Court preclude Mr. Railsback from testifying as an expert witness in this matter. (Id.).

      **A.**      **Necessary Qualifications**

            **1.**      **Window Covering Design**

In its Motion to Exclude, Newell first asserts Mr. Railsback lacks qualifications with respect to window covering design. (Newell's Memo in Support, PP. 3-5). Plaintiffs respond by describing Mr. Railsback's qualifications, both generally and specifically with respect to corded window coverings. (Plaintiffs' Response in Opposition to Defendant's Motion to Exclude Plaintiffs' Disclosed Expert Ben T. Railsback ("Plaintiffs' Opp."), PP. 3-7). Plaintiffs continue to delineate the methodologies underlying his opinions, and the manner in which Mr. Railsback applied these methodologies to the facts of this case. (Id., PP. 9-10). Upon consideration of both Plaintiffs' response and Mr. Railsback's testimony at the Daubert hearing, the Court finds Mr. Railsback's qualifications and the conclusions regarding window covering design set forth in his preliminary

report sufficiently reliable to assist the jury's determination of a disputed issue, and once again Newell's assertions concerning flaws in his methodology or underlying assumptions "are proper subjects for [Newell's] own expert testimony and for thorough cross-examination before the trier of fact." Harrington, 2009 WL 701994 at *4; see also Lauzon, 270 F.3d at 695 ("It is far better where, in the mind of the district court, there exists a close case on relevancy of the expert testimony....to allow the expert opinion....").

## 2. Window Covering Warnings

Newell next asserts Mr. Railsback lacks the necessary qualifications to offer opinions about window covering warnings. (Newell's Memo in Support, PP. 5-7). In support of this assertion, Newell notes Mr. Railsback has never designed a warning, much less a warning for window coverings. (Id.). In response, Plaintiffs assert Mr. Railsback is prepared to testify only regarding the need for a warning in the first instance, not the adequacy of any particular warning. (Plaintiff's Opp., P. 8). Plaintiffs maintain Mr. Railsback is qualified to render such an opinion by virtue of his engineering experience. (Id.).

In his report, Mr. Railsback states that pursuant to the engineering hierarchy,

> the first priority in safety engineering is to eliminate the hazard through design. Guards or safety devices should only be used if the hazard cannot be eliminated by design. Warnings are a last resort to be used only if the hazard cannot be eliminated by design or guarding.

(Railsback Preliminary Engineering Report, P. 9). During the Daubert hearing, Mr. Railsback testified that because neither design change nor safety devices could completely eliminate the hazards associated with window coverings, some type of warning was necessary. Upon consideration, the Court finds Mr. Railsback's testimony is admissible under Federal Rule of Evidence 702. See Ware v. Whiting Corp., 2007 WL 2409751 at *6 (E.D. Mo. 2007) (citation omitted) ("Proposed expert testimony must meet three prerequisites to be admissible under Rule 702: (1) the evidence of

specialized knowledge must be useful to the trier of fact, i.e., it must be relevant; (2) the proposed witness must be qualified to give expert testimony in a particular field; and (3) the expert's opinion must be reliable in that the expert utilized reliable principles and methodology in arriving at the opinion."). This portion of Newell's Motion to Exclude will therefore be denied.

### B. Relevant Fit

In its final point, Newell maintains Mr. Railsback's opinions must be excluded, as they do not "fit" the inner cord issue of this case. (Newell's Memo in Support, PP. 7-11). In other words, Newell asserts Mr. Railsback's opinions are not relevant, as they mostly address hazards associated with the external pull cord on window coverings, which is not at issue here. (Id., P. 7).

By way of response, Plaintiffs assert Mr. Railsback attaches significance to the "pull cord," because it and the "inner cord" are part of the same continuous cord. (Plaintiffs' Opp., P. 11). Plaintiffs continue to assert that "Defendants' challenge[] as to the 'fit' of Mr. Railsback's opinions is nothing more than a disagreement [] with the factual basis for his opinions and his ultimate conclusion." (Id., P. 15). The Court agrees with Plaintiffs that such concerns are not grounds for exclusion, but rather for vigorous cross-examination. See Nebraska Plastics, Inc., 408 F.3d at 416 (internal quotation marks and citations omitted) ("'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'"). See also Harrington, 2009 WL 701994 at *4; Lauzon, 270 F.3d at 695. This portion of Newell's Motion to Exclude Plaintiffs' Disclosed Expert Ben T. Railsback will therefore be denied.

### IV. Erick H. Knox

Erick H. Knox, Ph.D., P.E., is the Director of Biomechanical and Safety Engineering at Engineering Systems Inc ("ESI"). (Knox Report, PP. 1-2). Newell retained Dr. Knox as an

engineering expert, "to perform a technical accident investigation and engineering analysis in the matter of Robinson vs. Newell Window Furnishings." (Id., P. 2). If permitted, Dr. Knox will testify as to the following conclusions:

1. The inner cord hazard associated with horizontal mini-blinds was not identified until many years after the subject blinds were manufactured. This hazard was not reasonably foreseeable to Kirsch.

2. The alleged Kirsch mini-blind [] involved in Ms. C. Robinson's accident was not defective in design, nor unreasonably dangerous when used as the manufacturer intended.

3. Ms. C. Robinson's accident was caused when an inner cord loop was placed around her neck. Access to and creation of the inner cord loop does not appear to be consistent with the existing evidence. ESI cannot rule out that the inner cord loop was present in some form prior to the accident.

4. Ms. C. Robinson's accident would not have occurred if she was properly supervised at the time of the accident.

(Knox Report, P. 24).

### A. Opinion 4

As noted above, Dr. Knox's fourth opinion states that "Ms. C. Robinson's accident would not have occurred if she was properly supervised at the time of the accident." (Knox Report, P. 24). During the Daubert hearing, Dr. Knox testified that he has no independent training on parental supervision. Furthermore, the Court's review of his report reveals Dr. Knox apparently based this opinion solely on his review of various press releases and publications available to parents at the time of the accident. (See Knox Report, PP. 20-23).

Upon consideration of the foregoing, the Court finds Dr. Knox did not reach his conclusion that C.R. was improperly supervised by relying on accepted standards or practices in his stated field. See Holloway v. Ameristar Casino St. Charles, Inc., 2009 WL 5169535 at *4 (E.D. Mo. Dec. 18, 2009) (disallowing expert medical testimony when physician failed to follow the accepted diagnostic

procedure). Rather, he simply regurgitated information found in deposition testimony and other literature and documentation. Under these circumstances, his conclusion does not assist the trier of fact, and must be excluded. Id. See also In re Genetically Modified Rice Litigation, 666 F.Supp.2d 1004, 1025 (E.D. Mo. 2009) (internal quotation marks and citation omitted) ("Expert witnesses must do more than simply summarize documents with a tilt favoring a litigant.").

### B.   Other Opinions

Upon consideration of the parties' briefs, together with Dr. Knox's live testimony during the Daubert hearing, the Court will permit Dr. Knox to testify as to his opinions other than those relating to parental supervision. At the outset, the Court finds Newell sufficiently has established that Dr. Knox is qualified to testify as an expert witness due to his specialized knowledge, experience and education in the areas of biomechanical engineering and accident reconstruction. Furthermore, Newell has established the relevance of Dr. Knox's proffered opinions. Any concerns in either of these regards "are proper subjects for [Plaintiffs'] own expert testimony and for thorough cross-examination before the trier of fact." Harrington, 2009 WL 701994 at *4. This portion of Plaintiffs' Motion to Exclude Testimony of Defendants' Expert Erick H. Knox will therefore be denied.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Newell Window Furnishings, Inc.'s Motion to Exclude Plaintiffs' Disclosed Expert Shelley Deppa (ECF No. 78) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude Testimony of Defendants' Expert Christine Wood (ECF No. 84) is **DENIED**.

**IT IS FURTHER ORDERED** that Newell Window Furnishings, Inc.'s Motion to Exclude Plaintiffs' Disclosed Expert Ben T. Railsback (ECF No. 80) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude Testimony of Defendants' Expert Erick H. Knox (ECF No. 86) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.


Dated this 25th day of July, 2012.


                                            /s/Jean C. Hamilton
                                            UNITED STATES DISTRICT JUDGE